**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SOVANNARA OEM, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:24-cv-9553 |
| | § | |
| | § | |
| SOKHA MEAS, DUNG NGUYEN, RAVY | § | |
| TORN, SREY PAO MEAS, DAVI NAILS | § | |
| #2547 & #4276, #1 NAIL PLUS, INC., #1 | § | |
| NAILS A INC., RAKSMEY NAILS INC., | § | |
| AND X CORP., | § | |
| | § | |
| Defendants. | § | |

**COMPLAINT**

Plaintiff Sovannara Oem, by and through her undersigned attorneys, files this Complaint against Defendants Sokha Meas, Dung Nguyen, Ravy Torn, Srey Pao Meas, DaVi Nails #2547 & #4276, #1 Nail Plus, Inc., #1 Nails A Inc., Raksmey Nails Inc., and X Corp. (collectively, "Defendants"), and alleges the following:

**INTRODUCTION**

1.      Plaintiff Oem brings this action to recover damages in redress of injuries caused by Defendants' illegal actions in trafficking her into the United States and subjecting her to work at an illegal wage.

2.      Defendants lured Plaintiff Oem away from the only home she had ever known in Cambodia under false pretenses and trafficked her to the United States, coercing Plaintiff Oem into working for Defendants and isolating her from others.

3.      For over eight years, Defendants required Plaintiff Oem to work at DaVi Nails #2547, DaVi Nails #4276, #1 Nail Plus, Inc., #1 Nails A Inc., Raksmey Nails Inc., and/or X Corp.

1

("Nail Salon Defendants") for eight to eleven hours per day every day of the week, save for a brief period after the birth of her first daughter in May 2008. But Plaintiff Oem's workday did not end when the Nail Salon Defendants closed. Instead, Plaintiff Oem, who was forced to reside in the home of Sokha Meas, Dung Nguyen, Ravy Torn, and/or Srey Pao Meas ("Individual Defendants") connected to #1 Nail Plus, Inc., #1 Nails A Inc., Raksmey Nails Inc., and/or X Corp., was required to perform household and business-related chores, including cooking, cleaning (both in the home and at the Nail Salon Defendants), laundry (both for the home and towels for the Nail Salon Defendants), and, in the Winter, shoveling snow.

4.      Defendants never paid Plaintiff Oem for her work at the Nail Salon Defendants or her work in the Individual Defendants' household; she only received cash tips directly from customers. Even then, if the Individual Defendants learned of any cash tips, they would demand that money for electricity, gas, food, and other household expenses.

5.      Defendants coerced Plaintiff Oem into staying and enduring these deplorable conditions by controlling all aspects of Plaintiff Oem's life, isolating her from family in Cambodia and individuals outside of Defendants' household, keeping all her immigration and identification documentation in a locked closet, and even taking her first-born daughter away from her for years when she was infant until she was preschool age. Although Plaintiff Oem was not physically restrained, Defendants took advantage of her isolation and unfamiliarity with the United States and its legal systems to make her feel as though she did not have any exit options.

6.      Under these circumstances, Plaintiff Oem justifiably believed she had no alternative but to continue working for and living with Defendants. Without anywhere else to turn, she remained working for Defendants for more than eight years before she was able to escape.

7.    Plaintiff Oem now seeks redress for the harm caused to her by Defendants' unlawful conduct under the Trafficking Victims Protection Reauthorization Act and for Defendants' violation of the New York Social Services Law.

## PARTIES

8.    Plaintiff Sovannara Oem is a citizen of Cambodia and the United States and currently resides in Katy, Texas.

9.    Upon information and belief, Defendant Sokha Meas is a Cambodian citizen residing in Kampong Cahhnang, Cambodia or Port Jervis, New York.

10.    Upon information and belief, Defendant Dung Nguyen is a U.S. citizen residing in Vietnam or Port Jervis, New York.

11.    Upon information and belief, Defendant Ravy Torn is a Cambodian and/or U.S. citizen residing in Port Jervis, New York.

12.    Upon information and belief, Defendant Srey Pao Meas is a Cambodian citizen residing in Sparrow Bush, New York or Port Jervis, New York.

13.    Upon information and belief, Defendant DaVi Nails #2547 is a franchisee of a corporation incorporated Utah with its principal place of business located at 41 Anawana Lake Road, Monticello, New York.  Plaintiff cannot locate information regarding the franchisee's corporate status.

14.    Upon information and belief, Defendant DaVi Nails #4276 is a franchisee of a corporation incorporated in Pennsylvania with its principal place of business located at 1325 Main Street, Taylor, Pennsylvania.  Plaintiff cannot locate information regarding the franchisee's corporate status.

15.     Upon information and belief, Defendant #1 Nail Plus, Inc. is a corporation incorporated in New York with its principal place of business formerly at 100 Pike Street, Port Jervis, New York, but relocated to 170 Jersey Avenue, Port Jervis, New York.

16.     Upon information and belief, Defendant #1 Nails A Inc. is a corporation incorporated in New York with its principal place of business formerly at 11 Bennett Street, Port Jervis, New York, but relocated to 170 Jersey Avenue, Port Jervis, New York.

17.     Upon information and belief, Raksmey Nails Inc. is a corporation incorporated in New York with its principal place of business at 170 Jersey Avenue, Port Jervis, New York.  Upon information and belief, it is a successor to Defendant #1 Nails Plus, Inc. and/or Defendant #1 Nails A Inc.

18.     Upon information and belief, Defendant X Corp. is a corporation incorporated in New York with its principal place of business at 170 Jersey Avenue, Port Jervis, New York.  Upon information and belief, it is a successor to Defendant #1 Nails Plus, Inc. and/or Defendant #1 Nails A Inc.  Plaintiff cannot locate information regarding the company's name or corporate status.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff Oem brings claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).

20.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over Plaintiff Oem's claims, as the matter in controversy exceed the sum or the amount of $75,000.00 and the action is brought by a citizen of Texas against citizens of New York, Pennsylvania, and Cambodia and U.S. citizens currently residing outside of the United States.

21.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims because all claims alleged herein arise out of the same series of transactions or occurrences and form part of the same case or controversy.

22.     The Court has personal jurisdiction over Defendants because the causes of action alleged herein arise from (i) Defendants' committing tortious acts within the State of New York; (ii) Defendants' tortious acts causing injury to Plaintiff Oem within the State of New York; and (iii) Defendants' transaction of business within the State of New York.

23.     Venue is proper in this Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

### A.     Plaintiff Oem's Early Life and Trafficking to New York

24.     Plaintiff Oem was born and raised in Kampong Cahhnang, Cambodia.

25.     As a young child in Cambodia, Plaintiff Oem met Dara Torn. Though Dara Torn moved to the United States with his parents Sokha Meas and Dung Nguyen when he was approximately six years old, some of their extended family continued to live in the same town as Plaintiff Oem and her family.

26.     Around 2005, Dara Torn returned to Cambodia to visit his extended family. While in Cambodia, Dara Torn reconnected with Plaintiff Oem, and the pair began dating. Dara Torn asked Plaintiff Oem's family if they could get married, which Plaintiff Oem wanted to do because she was in love with Dara Torn.  In 2005, there was a ceremonial marriage in Cambodia with Dara Torn's and Plaintiff Oem's family and friends present.  Upon information and belief, this was not a legal marriage recognized by the United States.

27.     On or about July 1, 2006, Dara Torn's mother, Sokha Meas, approached Dara Torn and Plaintiff Oem about moving to the United States. Sokha Meas told Plaintiff Oem she would

pay for her travel to the United States and "take care" of her immigration paperwork if Plaintiff Oem would work in a nail salon Sokha Meas owned in New York for three years. Sokha Meas claimed it cost a lot of money to do the paperwork and get Plaintiff Oem to the United States. After being pressured by her husband Dara Torn and Sokha Meas, Plaintiff Oem agreed. Upon information and belief, Sokha Meas handled Plaintiff Oem's immigration and documentation for her to come to the United States. Plaintiff Oem later learned that she entered the United States on a K-1 visa.

28.    Dara Torn and Plaintiff Oem then moved to Port Jervis, New York around July 2006, and were forced to live at Sokha Meas's house then located at 11 Bennett Street. Upon arrival in the United States, on or about July 11, 2006, Sokha Meas took Dara Torn and Plaintiff Oem to the courthouse in Port Jervis and they were legally married in the United States.

**B.    Defendants Forced Plaintiff Oem to Work for Free for Their Benefit**

29.    The day after she arrived in the United States in July 2006, Plaintiff Oem started working in #1 Nail Plus, Inc., then located at 100 Pike Street, and she began providing nail services to the Defendants' customers without pay. Initially, she worked at #1 Nail Plus, Inc., but over the course of the next eight-and-a-half years, Plaintiff Oem worked at all Nail Salon Defendants.

30.    From July 2006 to December 2014, Defendants forced Plaintiff Oem to work at the Nail Salon Defendants for eight to 11 hours per day, seven days a week, save for a brief approximately one-month period after the birth of her first daughter in May 2008. Defendants refused to allow her to take a lunch break, rest break, or day off. Plaintiff Oem's responsibilities at the nail salons included, but were not limited to, pedicures, manicures, acrylic nails, foot washing, eyebrow waxing, massages, and commercial cleaning.

31.    Defendants did not pay Plaintiff Oem for this work. Plaintiff Oem only received cash tips paid directly to her from customers. She would receive approximately $150–$200 weekly in cash tips.

32.     Defendants financially benefitted from Plaintiff Oem's labor. They received money from customers for the services provided by Plaintiff Oem, but did not pay her for those services or her time working.

33.     Defendants shuttled Plaintiff Oem and others back and forth between the Nail Salon Defendants in New York and Pennsylvania. Upon information and belief, the salons were owned and/or run by Sokha Meas and/or her sister Srey Pao Meas, but other family members also helped operate the Nail Salon Defendants.  All the Individual Defendants—including Sokha Meas; Srey Pao Meas; Dung Nguyen, Sokha Meas's husband; and Ravy Torn, Sokha Meas's and Dung Nguyen's son and Dara Torn's brother—played key roles in setting Plaintiff Oem's hours and work schedule and forcing her to work at the Nail Salon Defendants.

34.     Plaintiff Oem was also forced to work for the Individual Defendants outside of the Nail Salon Defendants.  Plaintiff Oem was forced to live in the same home as one or more Individual Defendants throughout this period.  Her workday did not end when she left the nail salons. Upon returning home from work, the Individual Defendants required Plaintiff Oem to perform domestic services, including cooking, cleaning the Defendants' house, doing their laundry, doing towel laundry for the Nail Salon Defendants, shoveling snow, and taking out the trash.

35.     Individual Defendants benefitted from Plaintiff Oem's labor in that they received these services at no cost.

**C.     Defendants' Coercion and Control of Plaintiff Oem**

36.     In addition to coordinating and controlling Plaintiff Oem's immigration, travel, and entry into the United States, Sokha Meas maintained custody and control of Plaintiff Oem's immigration and identification documents and kept them locked away from Plaintiff Oem. Plaintiff Oem's documents were kept with Sokha Meas or one of the other Individual Defendants at Sokha Meas's house at 11 Bennett Street, Port Jervis, New York. As soon as Plaintiff Oem arrived

in the United States, Sokha Meas confiscated and controlled Plaintiff Oem's passport and other documents used for Plaintiff Oem to enter the United States. These documents were locked in a closet away from Plaintiff Oem. Later, Sokha Meas maintained and controlled Plaintiff Oem's daughters' birth certificates and social security numbers and Plaintiff Oem's marriage license, as well.

37.     From July 2006 to December 2014, Plaintiff Oem lived with one or more Individual Defendants who continuously surveilled and monitored Plaintiff Oem. Once she arrived in New York, the Individual Defendants rarely let Plaintiff Oem out of their sight.

38.     Defendants monitored Plaintiff Oem closely and prohibited Plaintiff Oem from developing local social contacts. Defendants scolded Plaintiff Oem if she attempted to speak to anyone outside their family, such as nail salon customers or neighbors. Further, Defendants purposefully bred distrust and paranoia in Plaintiff Oem. Individual Defendants often told her that if she talked to anyone other than Defendants and/or tried to leave them without her passport, then immigration enforcement would take her away or put her in jail. Additionally, Defendants repeatedly moved Plaintiff Oem between houses where the Individual Defendants lived, which further isolated Plaintiff Oem from the outside community. She first lived at 11 Bennett Street, Port Jervis with Sokha Meas; at one point was moved to one of the Individual Defendants' homes in Scranton, Pennsylvania for approximately six months; was returned to Port Jervis to live in yet a third house controlled by Individual Defendants; and then was moved to 170 Jersey Avenue, Port Jervis, which was attached to the Nail Salon Defendant 1 Nail Plus, Inc., #1 Nails A Inc., Raksmey Nails Inc., and/or X Corp. Plaintiff Oem's documentation was kept at 11 Bennett Street in Port Jervis, even as she was forced to move from house to house in New York and Pennsylvania. Combined, this kept Plaintiff Oem unaware of the laws and societal norms in the United States, and kept her dependent upon Sokha Meas and the other Individual Defendants.

8

39.    Defendants further controlled Plaintiff Oem by isolating her from, and preventing meaningful communication with, her family in Cambodia.  Plaintiff Oem's only way of communicating with her family, initially, was by a landline phone using calling cards she purchased with tip money. The Individual Defendants would listen to her conversations on another phone on the line.  If Plaintiff Oem said anything negative, her access to the phone would be taken away.  Later, when Plaintiff Oem learned how to Skype, Defendants shut down the home's Wi-Fi to prevent her from communicating with her family without surveillance.  If Plaintiff Oem did anything that the Defendants perceived as wrong, her phone privileges would be taken away.

40.    To further isolate Plaintiff Oem, Defendants made sure that her work demands were never ending and controlled every aspect of Plaintiff Oem's daily life—they would set her work schedule, transport her to and from the Nail Salon Defendants that were further from their home, and require her to work both at the Nail Salon Defendants and in the Individual Defendants' homes.  They told her what to do and where to be at all times, prevented her from taking days off or visiting the doctor and even told her when she could eat and sleep.  Typically, Plaintiff Oem was not allowed to shower or sleep until she completed all her daily work for the Nail Salon Defendants and the Individual Defendants.

41.    Defendants also kept Plaintiff Oem dependent on them.  Though Plaintiff Oem worked 70-plus-hour weeks often, Defendants never once paid Plaintiff Oem. Even the little cash tip money she received directly from customers was taken by the Individual Defendants, who demanded the money from Plaintiff Oem to pay for utilities, food, electric, gas, and/or maintenance.

42.    In July 2009, Plaintiff Oem did not start to receive pay for her work at the Nail Salon Defendants or for the Individual Defendants contrary to Sokha Meas's promises that she would start to pay her after three years once her immigration expenses had been paid in full. Plaintiff Oem asked why she was not getting paid, and was told that she did not need money.  Plaintiff Oem did

not push further.  Plaintiff Oem was afraid and did not know anything about the United States' laws and protections.

43.    The Individual Defendants also controlled Plaintiff Oem's personal and family situation within her immediate family unit in the United States.  Sokha Meas arranged for Plaintiff Oem's legal marriage in the United States to Dara Torn, and took them to the courthouse to ensure it was done.

44.    Further, in Summer 2008, when Plaintiff Oem's eldest daughter was one- to two-months old, Sokha Meas took Plaintiff Oem's daughter to live with Sokha Meas's family in Cambodia and forced Plaintiff Oem to stay and work in New York.  Plaintiff Oem's daughter was only returned to her years later when her daughter was three or four years old and could attend school in the United States while her mother worked.

45.    In 2012, Sokha Meas told Plaintiff Oem and Dara Torn that they needed to get divorced for logistical reasons.  Sokha Meas told Plaintiff Oem that her daughter could go to school if Plaintiff Oem divorced Dara Torn. Plaintiff Oem and Dara Torn complied and got divorced.  Upon information and belief, Sokha Meas tried to get Dara Torn to marry another woman in Cambodia after their divorce, but was unsuccessful.

46.    Defendants also maintained control over Plaintiff Oem by punishing her or others similarly situated to her for disobeying or upsetting them.  As punishment, Plaintiff Oem was forced to work more, forced to give more cash tip money to the Individual Defendants, yelled at, threatened, and/or lost any phone privileges she had at the time.  Defendants threatened to take Plaintiff Oem's children away after her eldest daughter was returned from Cambodia.  Further, when Plaintiff Oem asked if she could leave, Defendants told her that she could leave, but her children must stay with them.

D.      **Plaintiff Oem's Escape from Defendants**

47.     In Fall 2014, Plaintiff Oem's brother, Sovanry Oem, who was trafficked to the United States after Plaintiff Oem by the Individual Defendants, escaped from Defendants' home when Sokha Meas was on vacation.  Although Dung Nguyen and Ravy Torn refused to give Sovanry Oem his immigration documents, he had managed to obtain a driver's license upon advice from a family friend in California, and was able to leave and fly from New York to the home of a family friend in Katy, Texas.

48.     After arriving there, Sovanry Oem contacted Plaintiff Oem and encouraged her to leave as well.  He further told her that she could buy a prepaid cell phone at Wal-Mart to communicate with him and their family without detection.  Sovanry Oem and Plaintiff Oem's relatives in Cambodia started working to help Plaintiff Oem leave. Upon information and belief, Plaintiff Oem's sister had a friend in California buy tickets for Plaintiff Oem and her daughters.

49.     Plaintiff Oem asked for her passport and immigration documents and her daughters' documentation, which were still being kept in the control of the Individual Defendants at 11 Bennett Street in Port Jervis, New York.  The Individual Defendants refused to give them to her. Plaintiff Oem called the police using the phone her brother had told her to buy.  The police arrived and forced the Individual Defendants to give the documents to Plaintiff Oem, and Plaintiff Oem was able to escape with her daughters in or about December 2014.

## COUNT ONE
## INVOLUNTARY SERVITUDE, 18 U.S.C. §§ 1584, 1595

50.     Plaintiff Oem repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

51.     Under 18 U.S.C. § 1584, it is unlawful to "knowingly and willfully hold[] to involuntary servitude … any other person for any term."

11

52.    Involuntary servitude is defined as "a condition of servitude in which the victim is forced to work for a defendant by use or threat of physical restraint or injury or by use of coercion through law or legal process."

53.    As set forth in 18 U.S.C. § 1595, Plaintiff Oem may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

54.    In violation of 18 U.S.C. § 1584, Defendants knowingly and willfully forced Plaintiff Oem to work for them for over eight years, including working at the Nail Salon Defendants and performing domestic house chores for the Individual Defendants. Defendants knowingly benefited from her labor.

55.    Defendants used threats of abuse of legal processes to induce Plaintiff Oem into working for Defendants, including, but not limited to, taking away her daughter, limiting Plaintiff Oem's interactions with her friends and family, threatening deportation and imprisonment, and threatening the well-being of Plaintiff Oem, her children, and her brother.

56.    Defendants' threats and coercion caused Plaintiff Oem to believe she had no choice but to work for Defendants.

57.    As a direct and proximate result of Defendants' actions, Plaintiff Oem has suffered damages in an amount to be determined at trial.

58.    Plaintiff Oem is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

**COUNT TWO**
**FORCED LABOR, 18 U.S.C. §§ 1589, 1595**

59.    Plaintiff Oem repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

60.    Plaintiff Oem brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Plaintiff Oem may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

61.    Under 18 U.S.C. § 1589, it is unlawful to "knowingly provide[] or obtain[] the labor or services of a person by any one of, or by any combination of, the following means--

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

62.    Defendants were perpetrators and violated 18 U.S.C. § 1589.

63.    In violation of 18 U.S.C. § 1589, Defendants knowingly obtained services and labor from Plaintiff Oem by means of coercion, isolation, intimidation, deprivation of Plaintiff Oem's passport, and through threats of imprisonment and deportation. Defendants frequently yelled and made verbal threats.  Defendants isolated Plaintiff Oem from her family in Cambodia and monitored

13

and surveilled her telephone conversations. Defendants also often threatened to harm Plaintiff Oem's family by taking her children away and punishing her brother. Defendants punished her brother by increasing the number of chores and labor he was forced to do for the individual Defendants and their relatives.

64.     In violation of 18 U.S.C. § 1589, Defendants engaged in a scheme to make Plaintiff Oem believe that if she did not perform labor or services for Defendants, she would be homeless, her children would be taken away, and her brother would be harmed. In fact, one of her children was taken away for over three years and sent back to Cambodia, and her brother was punished with more chores.

65.     As a direct and proximate result of Defendants' actions, Plaintiff Oem has suffered damages in an amount to be determined at trial.

66.     Pursuant to 18 U.S.C. § 1595(a), Plaintiff Oem is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## COUNT THREE
## TRAFFICKING WITH RESPECT TO PEONAGE, SLAVERY, INVOLUNTARY SERVITUDE, OR FORCED LABOR IN VIOLATION OF 18 U.S.C. §§ 1590, 1595

67.     Plaintiff Oem repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

68.     Plaintiff Oem brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Plaintiff Oem may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

69.    Under 18 U.S.C. § 1590, it is unlawful to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for labor or services in violation of this chapter," and those who do "shall be fined under this title or imprisoned not more than 20 years, or both."

70.    Defendants were perpetrators and violated 18 U.S.C. § 1590.

71.    In violation of 18 U.S.C. § 1590, Defendants knowingly recruited, harbored, transported, provided, or obtained Plaintiff Oem for labor or services.

72.    Defendants obtained services and labor from Plaintiff Oem by means of coercion, isolation, intimidation, deprivation of Plaintiff Oem's passport, and through threats of imprisonment and deportation. Defendants frequently yelled and made verbal threats.  Defendants isolated Plaintiff Oem from her family in Cambodia and monitored and surveilled her telephone conversations. Defendants also often threatened to harm Plaintiff Oem's family by taking her children away and punishing her brother. Defendants punished her brother by increasing the number of chores and the amount of labor he was forced to do for the individual Defendants and their relatives.

73.    Defendants engaged in a scheme to make Plaintiff Oem believe that if she did not perform labor or services for Defendants, she would be deported to Cambodia or imprisoned.

74.    As a result of Defendants' conduct, Plaintiff Oem has suffered damages in an amount to be determined at trial.

75.    Pursuant to 18 U.S.C. § 1595(a), Plaintiff Oem is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

**COUNT FOUR**
**UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS IN FURTHERANCE OF**
**TRAFFICKING, PEONAGE, SLAVERY, INVOLUNTARY SERVITUDE, OR FORCED**
**LABOR IN VIOLATION OF 18 U.S.C. §§ 1592, 1595**

76.     Plaintiff Oem repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

77.     Plaintiff Oem brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Plaintiff Oem may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

78.     Under 18 U.S.C. § 1592, it is unlawful to "knowingly destroy[], conceal[], remove[], confiscate[], or possess[] any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person--

(1) in the course of a violation of section ... 1584, 1589, [or] 1590 ...;

(2) with intent to violate section ... 1584, 1589, [or] 1590; or

(3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons[.]"

79.     Under 22 U.S.C. § 7102(9) of the TVPRA, a "severe form of trafficking in persons" is defined as "the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery."

16

80.    Sokha Meas confiscated Plaintiff Oem's passport as soon as she landed in the United States, and the Defendants maintained possession of her passport for several years, until Plaintiff Oem mustered up the courage to ask for help from the police.

81.    Plaintiff Oem was a victim of a "severe form of trafficking" as a result of Defendants obtaining labor and services from Plaintiff Oem by means of threats, coercion, isolation, intimidation, and force.  Defendants therefore violated 18 U.S.C. § 1592.

82.    As a result of Defendants' conduct, Plaintiff Oem has suffered damages in an amount to be determined at trial.

83.    Pursuant to 18 U.S.C. § 1595(a), Plaintiff Oem is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## COUNT FIVE
## BENEFITTING FINANCIALLY FROM TRAFFICKING IN PERSONS IN VIOLATION OF 18 U.S.C. §§ 1593(A), 1595

84.    Plaintiff Oem repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

85.    Plaintiff Oem brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Plaintiff Oem may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

86.    Under 18 U.S.C. § 1593(A), it is unlawful for anyone to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of [TVPRA], knowing or in reckless disregard of the fact that the venture has

17

engaged in such violation, shall be fined under this title or imprisoned in the same manner as a completed violation of such section."

87.     Defendants knowingly benefitted financially or by receiving something of value, specifically Plaintiff Oem's unpaid services at the Individual Defendants' residence and the Nail Salon Defendants from participation in a venture that engaged in activities in violation of the TVPRA.

88.     All Defendants participated in a venture with co-Defendants to engage Plaintiff Oem in forced labor or involuntary servitude by means of force, harm, and threats.

89.     Defendants knew or recklessly disregarded the fact that its ventures had engaged in violation of the TVPRA.

90.     As a result of Defendants' conduct, Plaintiff Oem has suffered damages in an amount to be determined at trial.

91.     Pursuant to 18 U.S.C. § 1595(a), Plaintiff Oem is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## COUNT SIX
## CONSPIRACY TO VIOLATE 18 U.S.C. §§ 1589, 1590, 1592

92.     Plaintiff Oem repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff Oem brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Plaintiff Oem may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

94.     Under 18 U.S.C. § 1594(b), it is unlawful to "conspire[] with another to violate section ... 1589, 1590, or 1592."

95.     Defendants conspired to violate 18 U.S.C. §§ 1589, 1590, and 1592 by agreeing to obtain or provide Plaintiff Oem's services or otherwise traffic Plaintiff Oem through means of force, harm, threats, or withholding of travel documents.

96.     As a result of Defendants' conduct, Plaintiff Oem has suffered damages in an amount to be determined at trial.

97.     Pursuant to 18 U.S.C. § 1595(a), Plaintiff Oem is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## COUNT SEVEN
## ATTEMPT TO VIOLATE 18 U.S.C. §§ 1584, 1589, 1590

98.     Plaintiff Oem repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

99.     Plaintiff Oem brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Plaintiff Oem may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

100.    Under 18 U.S.C. § 1594(a), it is unlawful to "attempt[] to violate section ... 1584, 1589, [or] 1590."

101.    Defendants attempted to violate 18 U.S.C. §§ 1584, 1589, and 1590 by attempting to obtain or provide Plaintiff Oem's services or otherwise traffic Plaintiff Oem through means of force, harm, threats, or withholding of passport documents.

102.    As a result of Defendants' conduct, Plaintiff Oem has suffered damages.

103.    Pursuant to 18 U.S.C. § 1595(a), Plaintiff Oem is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

**COUNT EIGHT**
**VIOLATION OF N.Y. SOC. SERV. LAW. § 483-BB(C) (I-II)**

104.    Plaintiff Oem repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

105.    Under New York Soc. Serv. Law  § 483-bb(c)(i), "an individual who is a victim of the conduct prohibited by section[] … 135.35 of the penal law may bring a civil action against the perpetrator or whoever knowingly advances or profits from, or whoever should have known he or she was advancing or profiting from, an act in violation of section[] … 135.35 of the penal law to recover actual, compensatory and punitive damages, injunctive relief, any combination of those or any other appropriate relief, as well as reasonable attorney's fees."

106.    Under N.Y. Penal Law § 135.35, it is unlawful to "compel or induce another to engage in labor or recruit, entice, harbor, or transport such other person by means of intentionally: (1) requiring that the labor be performed to retire, repay, or service a real or purported debt that the actor has caused by a systematic course of conduct with intent to defraud such person; (2) withholding, ... or confiscating any actual or purported passport, immigration document, or any other actual or purported government identification document, of another person with intent to impair said person's freedom of movement; provided, however, that this subdivision shall not apply to an attempt to correct a social security administration record or immigration agency record in accordance with any local, state, or federal agency requirement, where such attempt is not made for the purpose of any express or implied threat; (3) using force or engaging in any scheme, plan, or pattern to compel

20

or induce such person to engage in or continue to engage in labor activity by means of instilling a fear in such person, that if the demand is not complied with, the actor or another will do one or more of the following: (a) cause physical injury, serious physical injury, or death to a person; or (b) cause damage to property, other than the property of the actor; or (c) engage in other conduct constituting a felony or unlawful imprisonment in the second degree in violation of section 135.05 of this article[.]"

107.    In violation of 18 U.S.C. § 1584, Defendants knowingly and willfully forced Plaintiff Oem to work for them for over eight years, including working at the Nail Salon Defendants and performing domestic house chores for the Individual Defendants.

108.    Defendants used threats of abuse of legal processes to induce Plaintiff Oem into working for Defendants, including, but not limited to, confiscating her passport, taking away her daughter, limiting Plaintiff Oem's interactions with her friends and family, threatening deportation and imprisonment, and threatening the physical well-being of Plaintiff Oem, her children, and her brother. As a result of Defendants' violations of N.Y. Soc. Serv. Law. § 483-bb, Plaintiff Oem has suffered damages in an amount to be determined at trial.

## JURY DEMAND

109.    Plaintiff Oem hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Oem respectfully requests that judgment be entered in her favor and against Defendant as follows:

1.    Compensatory damages according to proof, which amount will exceed $75,000.00;

2.    Unpaid wages, including minimum wages, overtime pay and spread-of-hours pay, and liquidated damages, penalties and interest thereon, which amount will exceed $75,000.00;

21

3.    Punitive damages;

4.    Attorneys' fees and costs;

5.    Pre-judgment and post-judgment interest as allowed by law; and

6.    Such other and further relief as the Court deems just and proper.


DATED: December 13, 2024                    Respectfully submitted,

                                            **WINSTON & STRAWN LLP**

                                            By: _/s/ Johanna Rae Hudgens_
                                                Johanna Rae Hudgens
                                                200 Park Avenue
                                                New York, NY 10166
                                                Tel: 212-294-2600
                                                Fax: 212-294-4700
                                                JHudgens@winston.com

                                                Robine K. Morrison (_pro hac vice_ to
                                                  be filed)
                                                800 Capitol Street, Suite 2400
                                                Houston, TX 77002
                                                Tel.: 713-651-2600
                                                Fax: 713-651-2700
                                                RMorrison@winston.com

                                                ATTORNEYS FOR PLAINTIFF
                                                SOVANNARA OEM